CHRISTOPHER P. BURKE, ESQ.
Nevada Bar No.: 004093
atty@cburke.lvcoxmail.com
218 S. Maryland Parkway
Las Vegas, Nevada 89101
(702) 385-7897

Attorney for Plaintiffs

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

oOo

| | |
|---|---|
| RODERIC A. CARUCCI and SUZANNE CARUCCI<br><br>Plaintiffs<br><br>vs.<br><br>WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., a foreign entity; BANK OF AMERICA, a foreign entity; DOES 1-10, inclusive, and all other persons unknown claiming any right title, estate, lien or interest in the real property described herein.<br><br>Defendants<br>_____/ | Case No. 3:09-cv-00712-RCJ-VPC<br><br>MOTION TO COMPEL ENFORCEMENT OF SETTLEMENT AGREEMENT<br><br>Removed action of 2nd Judicial District Court Case No. CV09-03165 |

COME NOW, plaintiffs, Roderic A. Carucci, and Suzanne Carucci, by and through counsel, Christopher P. Burke, Esq., and file the following motion to Compel Enforcement of the Settlement Agreement which was negotiated at the January 14, 2011 foreclosure mediation hearing. The Plaintiffs believe the following facts are undisputed:

1.      On January 14, 2011 the Plaintiffs filed a motion to amend their complaint to add additional claims for relief (Docket No. 46).

1

2.  On January 14, 2011, Wells Fargo and the Plaintiffs participated in a foreclosure mediation hearing where an agreement was reached to allow a short sale of the subject property.

3.  Brian Fuhr, a representative of Wells Fargo appeared at the mediation hearing by telephone.

4.  Donna Osborn represented she had full authority to negotiate the terms of the short sale on behalf of her client, Wells Fargo.

5.  The terms of the agreement were as follows:

   A.  Wells Fargo would accept the pending offer of $450,000.00,

   B.  Mr. Carucci would provide a 3 month profit and loss for his law practice, and 2 months bank statements.

   C.  Wells Fargo would release the Plaintiffs from all liability on the underlying note and deed of trust.

6.  Based upon this agreement, the parties agreed to stay litigation in this Court so the short sale could be completed. On February 4, 2011 this Court entered an Order approving the stipulation (Docket No. 48). This Order further directed the parties to file a joint status report regarding the status of the short sale on or before April 4, 2011.

7.  Mr. Carucci personally delivered the profit and loss report and the bank statements to Donna Osborn on January 14, 2011.

8.  The profit and loss report and the bank statements reflected income and expenses for the period of time which was consistent with Mr. Carucci's historical earnings for the past year.

9.  On February 9, 2011 Donna Osborn sent an email to Mr. Carucci and his Realtor which informed each that Wells Fargo has refused to accept the $450,000.00 offer.

10. Ms. Osborn, in the same email, instructed Mr. Carucci and his Realtor to make a counteroffer to the third party of $489,000.00 and to to contribute the sum

of $10,000.00. A true and correct copy of this email has been attached to the Affidavit of Roderic Carucci as Exhibit "1".

11.   The buyer refused to accept the counteroffer.

12.   In an attempt to prevent the sale from falling through, Mr. Carucci's Realtor, Michelle Plevel, offered to reduce her own commission to 5%. She was also able to convince the buyer to contribute an additional $7,500.00.

13.   On March 2, 2011 Ms. Plevel sent an email to Donna Osborn informing her of these facts. A true and correct copy of this email has been attached to the Affidavit of Michelle Plevel as Exhibit "1".

14.   March 2, 2011 Ms. Osborn spoke to Ms. Plevel and told her an additional $17,500.00 was required to close the deal.

15.   On March 3, 2011 Ms. Plevel called Brian Fuhr. He informed her that Wells Fargo had closed their file on the short sale as of February 17, 2011.

16.   The buyers withdrew their offer and the pending transaction fell through as a result.

### Analysis

An attorney has the apparent authority to bind a client even if the client refuses to subsequently sign the agreement negotiated by the attorney. In May v. Anderson, 119 P.3d 1254, 121 Nev. 668, (Nev. 2005) the Mays' attorney accepted a settlement which included a full release of all claims. His clients refused to execute the documents or accept payment. They wanted to pursue others who may have been culpable in the accident. Because their attorney had authority to settle the case, the district court enforced the agreement and compelled compliance by dismissing the Mays' action. The Supreme Court affirmed, holding the attorney bound the client.

Specific performance is available when the terms of the contract are definite and certain, the remedy at law is inadequate, the plaintiff has tendered performance

and the court is willing to order it. Stoltz v. Grimm, 689 P.2d 927, 100 Nev. 529, (Nev. 1984), citing Carcione v. Clark, 96 Nev. 808, 618 P.2d 346 (1980).

In the case at bar, the subject matter concerns unique real property. The terms are definite and certain. i.e. the Plaintiffs shall procure a buyer for $450,000.00 and Wells Fargo does not have to foreclose or litigate whether or not it has the right to foreclose. There was one condition. Mr. Carucci was to provide current financial documentation to demonstrate he is earning no more than he has historically earned. He isn't. He met the condition and procured the buyer. It is Wells Fargo who broke the agreement.

Should Wells Fargo contend the modification is unenforceable due to the statute of frauds, the Plaintiffs' performance excuses the requirement of a writing.

This issue came up in In re Desert Enterprises, 87 B.R. 631, (Bkrtcy. D. Nev. 1988). The matter before the bankruptcy court was a claim objection. A note secured by real property was to be assumed, but the holder wanted to raise the interest from 10% to 15% in consideration of the assumption. While assumption documents were sent, none were signed. Nevertheless, the debtor made some of the increased payments. The court held that under Nevada law, a written contract may be orally modified by the parties. The note came within the statute of frauds because it was secured by a deed of trust. The court held the doctrine of part performance was a recognized exception to the statute of frauds, and the exception applied to the modification of the interest rate.

The bankruptcy court cited Summa Corp. v. Greenspun, 96 Nev. 247, 607 P.2d 569 (1980) which sets forth the doctrine of part performance. It applies where (1) the terms of the oral agreement are definitely established, (2) the acts of the performing party are done with a view to the agreement being performed, and (3) the party seeking to enforce the agreement has performed or is ready and willing to perform the essentials of the agreement on his part. Id 87 B.R. at 634.

4

In the case at bar, the terms of the modification agreement with Wells Fargo are clearly established. Even though Wells Fargo rejected the $450,000.00 offer, the Plaintiffs used their best efforts to keep the deal on the table. These acts were performed by the Plaintiffs with a view to the agreement being enforced. Last, the Plaintiffs are still willing to perform the essentials of their agreement and sell the home for $450,000.00. This agreement is enforceable.

Should Wells Fargo decide that it no longer wants to sell the subject property for $450,000.00, then the Plaintiffs are entitled to a full discharge of their obligations under the note.

The failure to tender timely performance can constitute a material breach of contract. Goldston v. AMI Investments, Inc., 655 P.2d 521, 98 Nev. 567, (Nev. 1982). If a party is unable to perform due to mis-conduct on the part of the other party, then the first party is entitled to enforce the contract in spite of his delay. Id 98 Nev. 569-570.

Applying this doctrine to the case at bar, the Plaintiffs performed. They could not consummate the sale because Wells Fargo refused to consent to the sale its lawyer had previously authorized. Therefore, the Plaintiffs are entitled to the benefit of the bargain - a discharge of any deficiency claim under the secured note.

### Conclusion

Donna Osborn is an officer of this Court. She represented she had absolute authority to settle this matter at the foreclosure mediation conference. Brian Fuhr ratified her authority by failing to object. Ms. Osborn proceeds to negotiate an agreement which is subsequently performed by the Plaintiffs. Wells Fargo refuses to perform. Ms. Osborn either never had actual authority or Wells Fargo feels that it cannot be bound by agreements or the statutory foreclosure mediation scheme which is the law of the State of Nevada. Either alternative is unjust. For those reasons, the Plaintiffs respectfully request an order from this Court compelling

5

Wells Fargo to honor the deal it negotiated or to simply release the Plaintiffs from all liability under the secured note. Plaintiffs further request an award of attorney's fees to compensate them for having to bring this motion based upon the Defendants' bad faith.

Dated: This 22 day of April, 2011

By: _____
Christopher P. Burke, Esq.
218 S. Maryland Parkway
Las Vegas, Nevada 89101
Nevada Bar Number 004093